STEPHEN SMITH, negro, by a next friend, *vs.* JONATHAN MILMAN.

The legatee for life of a female slave is entitled to the issue of such slave, born during the life estate.

The owner of a female slave may give her to one person; and her issue to another.

PETITION for freedom.

Rachel Marvel by will, dated 27th August, 1791, bequeathed the mother of petitioner, Hessy, to her daughter Ann Smith for life; and, after her decease, to her grand-daughter Nancy Smith, her heirs and assigns forever. And if the said negro Hessy should bear children, she gave to her grand-daughter, Sally Smith, " the *first* child that she bears, to be hers and her heirs forever."

After the death of Rachel Marvel, the negro girl Hessy went into the possession of Ann Smith and bore children, the first of whom was either dead born or lived but a few minutes, about which the testimony was uncertain; and the second was the petitioner, Stephen. Stephen was held by Ann Smith, and sold by her to Sally Smith for a term of years, and manumitted in the bill of sale to be free after she attained thirty-one years of age. Sally Smith lived with Elisha Evans and died in his family, directing verbally in her last sickness that Evans should have the use of Stephen during the remainder of his term of servitude. On the death of Ann Smith, Hessy passed into the possession of Elisha Evans, who had married Nancy Smith, the legatee over. Jonathan Milman, the respondent, was the administrator of Elisha Evans. Elisha Evans in his lifetime sometimes claimed Stephen as his slave for life, at others delared that he had no right to him; and in 1816, by an instrument under seal, declared that he was free. Before that time, however, Evans became embarrassed in his circumstances, and Stephen was levied on by execution process as his property, and was sold by the creditors of Evans for a small sum to Thomas Robinson, Esq., who had never taken possession of him.

*Ridgely* and *Brinckloe*, for respondent, contended—1st. That the bequest in the will of Rachel Marvel to Sally Smith of the *first* child that Hessy bore, was satisfied by the birth of a dead-born child. 2d. That Stephen being the second born child belonged to Nancy Smith, afterwards the wife of Elisha Evans, upon the death of the testator's daughter Ann Smith. 3d. That Ann Smith being but a tenant for life, had no right to manumit the negro Stephen. 4th. That as he belonged to Mrs. Evans he was liable to be seized for Evans' debts, and that his manumission in 1836, could have no effect. 5th. That the sale of Stephen by Evans' creditors did not change the title, as

the administrator paid the sum for which he sold, (being but a nominal sum) and kept him in the estate.

On the part of the petitioner, it was contended—1st. That the proof was not satisfactory that the first child of Hessy was born alive, and that the bequest to Sally Smith was not satisfied by a dead born child. 2d. That supposing Stephen to have been the *second* child he belonged to Ann Smith, being born during her life estate, and was freed by her manumission, he having now attained thirty-one years of age. 3d. That Elisha Evans and wife never claimed Stephen as a slave for life, but uniformly admitted that he was but a slave for a term of years, and this before Evans was embarrassed in his circumstances. 4th. That if Stephen was the property of Evans he had been sold, and was now the property of Mr. Robinson.

*The Court* directed attention to the point, whether the legatee for life or remainderman was entitled to the issue of a female slave, born during the continuance of the tenancy for life.

*Per Curiam.*

J. M. Clayton, *Chief Justice :*—It is not quite clear from the testimony in this case, that the petitioner was the first child negro Hessy bore. If he was, then he was the property of Sally Smith, and is not the property of the respondent. It is well settled that the owner of a female slave may give her to one of his children, and the increase to another. 3 *Little's Rep.* 275, *Bank's adm'r.* vs. *Marksbury.*

If we take a different view of this evidence and credit the respondent's witnesses, who say that negro Hessy was the mother of a child before the petitioner was born, then he was the property of Ann Smith, the legatee of Hessy for life, having been born during the life of Ann Smith; and so never belonged to Nancy Smith, under whom the respondent claims title. This point has been differently adjudged in different states, but the decisions in *Scott* vs. *Dobson,* 1 *Har. & M'Henry,* 160 ; *Somerville* vs. *Johnson,* 1 *Har. & M'Henry,* 348 ; *Hamilton* vs. *Cragg,* 6 *Har. & Johns. Rep.* 18 ; *Standiford* vs. *Amoss,* 1 *Har. & Johns. Rep.* 526, and *Bohn* vs. *Headley,* 7 *Har. & Johns. Rep.* 257, are well founded in principles of justice and humanity. The case of *Conklin* vs. *Havens,* 12 *Johnson's Reports,* 314, is in accordance with these decisions, as are the cases of *negroes Peter & Lewis* vs. *Cureton et al.* and *negro Sarah* vs. *Taylor,* both decided by judge Cranch in 1824. So the increase of live stock belongs to the owner or person entitled to the usufruct at the time of the increase. He who supports the child of the slave in infancy, ought

to be justly remunerated for his expense and trouble by its services, and the expectation that he will be so remunerated, will insure greater care and attention to the wants of the child.

If Stephen was the slave of Ann Smith, then is he clearly free by her deed of manumission.

The cases in which it has been ruled that where a female slave has been given to A. for life, and after the death of A. to B. forever, the children of such slave born during the life of A. become the property of B. on the death of A. have been founded on what we deem to be a misapplication of the principle " partus sequitur ventrem." The child must, it is true, follow the condition of the mother. But the meaning of the maxim is, that where the mother is a slave, the child is a slave ; and where the mother is free, the child is free *a nativitate.* To this extent we cheerfully go. But the maxim is misapplied when it is used to direct us not as to the condition of the issue, but as to the person entitled to the ownership of that issue. The mother may be the property of A. and the child the property of B. and still the maxim retains all its legitimate force, so long as the condition of the issue corresponds with the condition of the mother at the time of its birth.

Let a decree be entered for the freedom of the petitioner.